## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS, LLC; GALAXY MED, LLC D/B/A GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; PAUL LEIGHT; KEVIN SINGER; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; EDGAR ENRIQUEZ; LANE MAZEI; and DANIELLE GISCOMBE,

      Movants,

v.

ELI LILLY AND COMPANY,

      Respondent.

Miscellaneous Case No. _____

Underlying Action: *Eli Lilly & Company v. DrugPlace, Inc. et al.* (No. 1:26-cv-23516-FAM) (EFD) (S.D. Fla.)

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO QUASH SUBPOENAS

Michelle Bernstein
**POLSINELLI PC**
600 3rd Avenue, Suite 4200
New York, NY 10016
Tel: (212) 413-2848
mbernstein@polsinelli.com

James Mangiaracina (*pro hac vice* forthcoming)
**POLSINELLI PC**
Three Logan Square
1717 Arch Street, Suite 1200
Philadelphia, PA 19103
Tel: (215) 267-3047
jmangiaracina@polsinelli.com

*Attorneys for Movants DrugPlace, Inc. (FL); DrugPlace Inc. (TN); Community Health Initiative, Inc.; Nakorn Wholesalers, LLC; Paul Leight; Kevin Singer; and Edgar Enriquez*

Henry Leventis
**Holland & Knight, LLC**
150 Third Avenue S, Ste. 2800
Nashville, TN 37201
Tel: (615) 850-6110
Henry.leventis@hklaw.com

*Attorney for Jerry Maynard Jr.*

Andrew Solinger
**Holland & Knight, LLC**
150 Third Avenue S, Ste. 2800
Nashville, TN 37201
Tel: (615) 850-8062
Andrew.solinger@hklaw.com

J. Nicholas Bunch
**Haynes and Boone, LLP**
2801 N. Harwood St., Ste. 2300
Dallas, TX 75201
Tel: (214) 651-5537
Nick.bunch@haynesboone.com
*Attorney for Galaxy Med, LLC d/b/a Galaxy
Pharmacy, Brightline Wholesale LLC, Lane
Mazei, Danielle Giscombe, and Readus
Smith*

Dated: July 21, 2026

ii

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 3

   I.    Procedural History ..................................................................................................... 3

   II.    The Bank Subpoenas ................................................................................................. 5

   III.   Additional Bank Subpoenas ...................................................................................... 9

   IV.   Clearing House Company Subpoenas ....................................................................... 9

LEGAL STANDARD ............................................................................................................ 10

ARGUMENT ........................................................................................................................ 11

   A.   The Movants Have Standing Because the Subpoenas Seek Their Private Financial
Information ...................................................................................................................... 11

   B.   The Probative Value of the Documents Sought Does Not Outweigh the Movants' Privacy
Interests Because the Subpoenas Are Not Connected to the Allegations in the Underlying
Action .............................................................................................................................. 13

   C.   The Privacy Interests at Stake Outweigh Any Probative Value of the Subpoena ............ 14

   D.   All of Lily's Subpoenas Violate Rule 45's 100-Mile Requirement ................................ 15

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias-Zeballos v. Tan*,
  2007 WL 210112 (S.D.N.Y. Jan. 25, 2007) ........................................................ 10, 12

*LG Cap. Funding, LLC v. Exeled Holdings Inc.*,
  2023 WL 3993751 (S.D.N.Y. June 14, 2023) .................................................... 12, 14

*Merida Cap. Partners III LP v. Fernane*,
  2025 WL 1541072 (S.D.N.Y. May 30, 2025) ........................................................ 11

*Morelli v. Alters*,
  No. 1:19-CV-10707-GHW, 2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020) ................... 10, 12, 14

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
  2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014).......................................................... 11

*Shojaee v. Anibal J. Duarte-Viera, P.A.*,
  365 So. 3d 1190 (Fla. 3d DCA 2023)...................................................................... 12

*Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*,
  650 F. Supp. 3d 199 (S.D.N.Y. 2023) ..............................................................Passim

*Solow v. Conseco, Inc.*,
  No. 06 CIV. 5988 BSJTHK, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008).............................. 11

**Statutes**

Article 1, Section 23 of Florida's Constitution.......................................................... 12

**Rules**

Fed. R. Civ. P. 45........................................................................................ 1, 4, 10, 15

Fed. R. Civ. P. 45(d)(3)(A) ............................................................................... 10

Fed. R. Civ. P. 45(d)(3)(B) ............................................................................... 10

Federal Rules of Civil Procedure 45(d)(3) and 26(c) .................................................. 1

Rule 45(c)(2)................................................................................................ 15

Rule 45(d) .................................................................................................. 1

Movants DrugPlace, Inc. (FL), DrugPlace, Inc. (TN), Community Health Initiative, Inc., Nakorn Wholesalers, LLC, Galaxy Med, LLC d/b/a Galaxy Pharmacy, Brightline Wholesale LLC, Paul Leight, Kevin Singer, Edgar Enriquez, Lane Mazei, Danielle Giscombe, Readus Smith, Jerry Maynard Sr., and Jerry Maynard Jr. (collectively, "Movants") respectfully move under Federal Rules of Civil Procedure 45(d)(3) and 26(c) to quash or alternatively modify the 1,016 subpoenas served by Plaintiff Eli Lilly and Company ("Lilly") that seek Movants' private confidential financial information. A listing of the third-party subpoenas of which Movants received notice is attached as **Exhibit A** to the accompanying Declaration of Michelle G. Bernstein.[1]

## PRELIMINARY STATEMENT

In just four weeks, Lilly has issued over 1,000 third-party subpoenas to companies and individuals across the country that seek Movants' irrelevant, private confidential financial information. These subpoenas are a financial dragnet. The sheer volume alone coupled with Lilly intentionally failing to notify Defendants of the subpoenas reflect the gamesmanship that Lilly is willing to engage in. The types of documents and information requested further reveal a complete disregard for the protected interests that Movants hold in their confidential financial information and reveal the failure on Lilly's part to take any reasonable steps to minimize undue burden and expense as required under Rule 45(d).

Lilly filed the underlying action in the Southern District of Florida on May 19, 2026 seeking a temporary restraining order and preliminary injunction. *See Eli Lilly & Co. v. DrugPlace, Inc. (FL)*, No. 1:26-cv-23516 (S.D. Fla.), ECF No. 1 (the "Underlying Action").

---

[1] Under S.D.N.Y. Local Civ. R. 37.2, parties usually must request an informal conference with the Court before filing a motion under Fed. R. Civ. P. 45. However, as the Motion is the lead event in this miscellaneous action, undersigned counsel determined in good faith that this requirement was inapplicable. Thus, Movants file the instant Motion to Quash. Movants are willing to submit a pre-motion letter upon the Court's request.

1

The Court in the Underlying Litigation granted the Parties' Stipulation and Joint Motion for Preliminary Injunction on June 9, 2026, which provided for, among other things, certain expedited discovery. *See Eli Lilly & Co.*, ECF No. 72. Within days of the Court's Order, Lilly apparently commenced a scorched-earth third-party subpoena campaign by purporting to serve over 1,000 subpoenas nationwide, without any notice to Movants. When Movants learned of a handful of the subpoenas through outreach by the recipients, Movants immediately requested notice of service of any third-party discovery. Lilly refused.

Lilly is employing tactics deliberately to circumvent Defendants' rights under the Federal Rules and to prejudice Defendants' ability to timely move to quash or take other action to protect their interests. The subpoenas were issued without notice, indiscriminately to over 1,000 banking institutions, with certain of the individual defendants' confidential social security numbers and other personal identifying information included, and without any regard for whether any of those institutions would have responsive material or any relationship to any of the Defendants. Movants would have never agreed to the expedited discovery in the Parties' Stipulation and Joint Motion for Preliminary Injunction, which provided for a five-day return date, if it knew that Lilly would engage in such prejudicial and improper tactics.

Movants do not contend that financial discovery is categorically improper. But when a subpoena seeks private financial information, there must be a balance of the probative value against the privacy interests at stake. *See Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202-03 (S.D.N.Y. 2023). Lilly's sweeping discovery and broad requests for documents regarding bank accounts and financial transactions fail that balance because Movants have a clear privacy interest in their non-public financial information, and Lilly plainly does not nor cannot articulate a legitimate interest. Indeed, there is

no plausible basis for Lilly's sweeping efforts to ascertain (i) essentially every detail about the Movants' bank accounts and information of bank accounts that are held by completely unrelated parties (under the Bank Subpoenas) and (ii) every payment message involving Movants since 2019 (for the Clearing House Subpoena).

Lilly's service of 1,016 virtually identical subpoenas nationwide is an egregious abuse of the Court's subpoena power and a gross violation of Movants' rights. For these reasons, Movants respectfully submit that the Court should quash *all* of the 1,016 subpoenas, or at minimum compel Lilly to modify the subpoenas such that they do not seek protectible, non-public financial information which has little to no probative value to the claims or defenses in the underlying litigation.

## BACKGROUND

### I.    Procedural History

Lilly filed the underlying action in the Southern District of Florida on May 19, 2026 and sought a temporary restraining order and preliminary injunction. *See Eli Lilly & Co. v. DrugPlace, Inc. (FL)*, No. 1:26-cv-23516 (S.D. Fla.), ECF No. 1 (Complaint attached as **Exhibit J)**. In broad terms, Lilly alleges that Movants caused fraudulent rebate claims for Trulicity, an expensive medication that Lily manufactures, to be submitted to Lilly through a chain involving a rebate aggregator, non-party Health Delegates and non-party pharmacy benefit managers ("PBMs"). Lilly alleges that the PBMs submitted rebate claims to Lilly for Trulicity and that Lilly paid rebates to PBMs, not Defendants. The PBMs or other intermediaries allegedly paid Defendants, and Defendants allegedly re-sold Trulicity to others.

The Court granted the Parties' Stipulation and Joint Motion for Preliminary Injunction on June 9, 2026, following an in-person status hearing, which provided for, among other things, certain expedited discovery. *Eli Lilly & Co.*, ECF No. 72 (transcript attached as **Exhibit I)**.  As

relevant here, Movants and Lilly agreed to certain discovery matters, such as allowing non-party subpoenas to be served immediately and made returnable within five days. *Id.* at 4. The parties agreed, and the Court allowed for, the five-day return period and a waiver of certain Rule 45 notice requirements for purposes of expediency, not to provide Lilly with *carte blanche* to eviscerate Defendants' rights. At the time Movants agreed to a truncated return schedule and to waive advance notice, they never could have imagined the volume of irrelevant, third-party subpoenas Lilly would serve in the coming weeks, let alone that they would do so in secret. Indeed, Movants did not learn of the subpoenas until certain third-party recipients brought the subpoenas to Movants' attention. Immediately upon learning of the handful of subpoenas that Movants received from those recipients, Movants reached out to Lilly's attorneys with a request to be notified of service of any third-party discovery. Incredibly, Lilly's attorneys refused.

As such, on Friday, July 3, 2026, Defendants sought court intervention and moved to require Lilly to provide Defendants with copies of any third-party subpoenas served. *See Eli Lilly & Co.*, ECF No. 81. The Southern District of Florida granted Defendants' motion on Tuesday, July 7, 2026 and required any party serving a non-party subpoena to provide a copy of the subpoena, including all attachments and document requests, to all other parties within one business day after service. *See Eli Lilly & Co.*, ECF No. 83.

It was only after the Court issued its July 7 Order that Plaintiff provided copies of certain of the subpoenas—in the form of a merged, 4,020-page PDF—that Movants discovered the egregious number of subpoenas, the irrelevant and invasive materials requested, and their procedural defects.

4

## II.    The Bank Subpoenas

From June 12 to July 2, 2026, Lilly issued 1,006 subpoenas to 1,006 banks across the country (collectively, the "Bank Subpoenas").  Lilly provided copies of 1,005 of these subpoenas on the evening of July 7, 2026, only *after* the Court issued its Order on Defendants' motion. To minimize the burden on the Court, a representative example of six of the Bank Subpoenas is attached as **Exhibit B** to the accompanying Bernstein Declaration.[2] Lilly notified Movants in a transmittal email that each of the Bank Subpoenas is essentially identical and seeks the same documents in a Schedule A, which is attached as **Exhibit C** to the Bernstein Declaration. *See* Exs. C, D. Lilly did not provide an unredacted Schedule A to Movants.

Each of the Bank Subpoenas contain the same date range of January 1, 2019 to the present, and the same requests:

1.  Identification of all accounts that each Defendant owns, holds, controls, is a beneficiary of, or has signatory authority for.

2.  For each identified account, various types of documents such as the account statements, copies of all wire transfers, front and back of all checks deposited into or drawn out of the account(s), all account opening and closing documents, and documents sufficient to show all account transactions, the current account balance, and all telephone numbers and email addresses associated with the accounts.

3.  For each transaction to or from an identified account, documents sufficient to show: (a) the amount and date of the transaction, (b) the name and address of the originator of funds, (c) the name and address of the recipient of funds, (d) the originator's account

---

[2] Should the Court rather review all 1,005 subpoenas, Movants can readily submit a thumb drive containing all the Bank Subpoenas or transmit them in any manner the Court prefers.

number and bank contact information, and (e) the recipient's account number and bank contact information.

4. For each identified account that is accessed online, documents sufficient to show: (a) IP login information, (b) unique device IDs assigned to devices that access the accounts, and (c) names, account numbers, and account holder addresses for all other accounts access by the same IP addresses or device IDs identified in (a)-(b).

5. For each identified account that is accessed by phone: (a) a log of telephone numbers that accessed the account by telephone, and (b) for each telephone number identified, the names, account numbers, and account holder addresses for all other accounts accessed by the identified telephone numbers.

*See, e.g,.* Ex. B.

None of these requests is tethered to the allegations in the Complaint nor the subpoena recipient. Lilly seems to have indiscriminately issued a subpoena to every bank in the United States it could identify and requested the same information from each, regardless as to whether there is any good faith belief those recipients would have any responsive material. None of the requests are limited, for instance, to Lilly, PBMs, Health Delegates, or any transaction alleged in the Complaint. Instead, the Bank Subpoenas seek a complete financial picture for every Defendant dating back to January 1, 2019—including the personal accounts of Movants Paul Leight, Kevin Singer, Edgar Enriquez, Lane Mazei, Danielle Giscombe, Readus Smith, Jerry Maynard Sr., and Jerry Maynard Jr.—and then extend even further to accounts and individuals with only incidental connections to those accounts.

The overbreadth is stark and Lilly is not entitled to such confidential financial information. Indeed, if Mr. Leight, for example, sent $100 to a family member for a birthday present, that

transaction is responsive and the subpoenas seek disclosure of that family member's personal account number. As another example, if Mr. Singer were merely a beneficiary of a relative's account—meaning he has no right to the funds during that person's lifetime—Lilly demands the extensive account records described in Requests 2 through 5 for that relative's account too. And Request 4(c) goes further still: if an unrelated person accessed a bank account using the same internet network—and thus the same public IP address—as any Defendant used to access an account, Lilly seeks that person's name, address, and account number. Request 5(c) is similar except instead of IP addresses as the commonality between a Defendant and anyone else who accessed an account with that bank, it is telephone numbers. This is not targeted discovery into alleged rebate transactions; it is a sweeping demand for private and confidential financial information belonging to Defendants and unrelated (and unidentified) third parties.

None of the Bank Subpoenas have a completed Proof of Service either; thus, the precise date that Lilly served them is still unknown as is whether each of the subpoenas complies with the five-day return schedule which depends upon the service date. *See, e.g.* Ex. B. at 2.  In addition, it is unclear if the 1,016 subpoenas Movants received as of this filing constitute the full scope of the third-party discovery served, as Movants have identified at least one Bank Subpoena for which Lilly never notified Movants; Movants received notice only from the recipient itself, Bessemer Trust Company of Florida.  Ex. E.[3]  The subpoena to Bessemer Trust Company of Florida is dated June 23, 2026, and was forwarded by Bessemer Trust to Defendants on June 29, 2026.[4]

---

[3] To reduce exhibit volume for this exhibit and the ones that follow, Movants did not include any of the Southern District of Florida's orders that Lilly may have attached to the subpoena, such as the HIPAA Protective and Confidentiality Order and the Order Granting Stipulation and Joint Motion for Preliminary Injunction. For confidentiality purposes, Movants redacted in Exhibit E through H the dates of birth, social security numbers, and employer identification numbers that Lilly disclosed in the subpoenas.

[4] Movants reserve all rights to seek the appropriate relief for Lilly's apparent failure to comply with the Southern District of Florida's July 7, 2026 Order requiring notice within one day of service of any non-party subpoena.

Further, because Lilly only provided to Defendants a redacted Schedule A in transmitting the 1,005 Bank Subpoenas, Movants did not know initially that Lilly also disclosed within those subpoenas the personal identifiers of individual Defendants—including dates of birth, addresses, and highly confidential Social Security Numbers—and disclosed the Employer Identification Numbers of the corporate Defendants. Only upon receiving notice from Bessemer Trust Company of Florida of the subpoena it received (which did not have redactions to Schedule A) did Movants uncover Lilly's disclosure of their personal identifiers. *Compare* Ex. C *with* Ex. E at 3-5, 12-14. This further underscores Lilly's disregard for the confidentiality of Defendants' information, and the reckless manner in which Lilly is conducting third-party discovery, particularly given that Lilly served over 1,000 financial institutions without any regard for whether any of the Defendants have or had any accounts or transactions with those institutions.

Lilly's tactics in issuing the Bank Subpoenas without any notice to Defendants have also already prejudiced Defendants by stripping them of their ability to move to quash or take other action to protect their rights before compliance with the five-day return date. Indeed, the following banks already responded pursuant to those subpoenas: Bank of America, BankUnited, Barwick Banking Company, Capital One, Charles Schwab, Citizens Savings Bank and Trust Company, Deutsche Bank Trust Company Americas, Edmonton State Bank, Fidelity Investments, Fifth Third Bank, First American Bank, First Horizon Bank, Gemini, Guardian Life, Hard Rock Bet, HSBC Bank USA, LPL Financial, Morgan Stanley, Republic Bank & Trust Company, Space Coast Credit Union, Stifel Nicolaus, Studio Bank, Synchrony Bank, TCM Bank, Truist Bank, UBS, United Community Bank, Unum Group, VyStar Credit Union, and Woodforest National Bank. Thus, as to those subpoenas Movants' rights already are vitiated.

**III.    Additional Bank Subpoenas**

Lilly continues to issue additional subpoenas to financial institutions, even after the onslaught of the first 1,006 Bank Subpoenas. Four additional subpoenas issued from July 8 to July 10, 2026 seek the same information as the Bank Subpoenas regarding Defendants and are attached as **Exhibit F**. On July 13, 2026, Lilly issued four more subpoenas to financial institutions, which are attached as **Exhibit G**. Three of these subpoenas seek the same information as the Bank Subpoenas for 25 non-parties as well as Movant DrugPlace, Inc. Lilly did not include a Schedule A for the fourth subpoena issued to Wells Fargo, so Movants still do not know what Lilly requested. The same set of issues plague these subpoenas as the Bank Subpoenas. Hereinafter, Exhibit F and Exhibit G are incorporated into the defined term "Bank Subpoenas."

**IV.    Clearing House Company Subpoenas**

On July 7 and 9, 2026, Lilly served two subpoenas on The Clearing House Payments Company LLC (the "Clearing House Subpoenas") that request, from January 1, 2019 to the present:

1.    All payment messages or all CHIPS payment messages involving any Defendant, regardless of whether that Defendant originated or received such payment; and

2.    "To the extent not included in Document Request 1, all payment messages involving any Defendant that were translated, converted, or mapped over from SWIFT, Fedwire, or any other electronic funds transfer messaging system."

The Clearing House Subpoenas are attached as **Exhibit H.** Like the Bank Subpoenas, these subpoenas are not related to any alleged transaction or any potentially relevant entity or individual referenced in the Complaint. They contain no subject-matter limitation and seek all "payment messages" or all "CHIPS payment messages," which are undefined, involving any Defendant. On their face, the requests sweep in unrelated personal wires, family transfers, mortgage payments,

9

tax payments, payroll, vendor payments, attorney payments, and unrelated business payments, for example. The Clearing House Subpoenas also disclose the social security numbers, dates of birth, and employer identification numbers of Movants. As of the date of this filing, Movants do not believe The Clearing House Payments Company has responded to the subpoenas.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs subpoenas to non-parties. A motion to quash or modify must be made in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). Here, each of the 1,016 subpoenas commands production to Lilly's counsel in New York, New York. This Court is therefore the proper court to address this Motion.

Rule 45 requires a court to quash or modify a subpoena that requires disclosure of privileged or other protected matter, or that otherwise exceeds the limits imposed by Rule 45. Fed. R. Civ. P. 45(d)(3)(A). Rule 45 also permits the Court to quash or modify a subpoena to protect a person affected by a subpoena from disclosure of confidential or protected information. Fed. R. Civ. P. 45(d)(3)(B). "A subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Morelli v. Alters*, No. 1:19-CV-10707-GHW, 2020 WL 6508858, at *4 (S.D.N.Y. Nov. 5, 2020) (citation omitted).

A party has standing to move to quash a subpoena where the subpoena seeks information in which the party has a personal right, privacy interest, or privilege. *See Silverstone*, 650 F. Supp. 3d at 202-03. Courts in this Circuit recognize that banking and financial records implicate privacy interests sufficient to confer standing for both individual and corporate defendants. *Id.*; *Morelli*, 2020 WL 6508858, at *5 ("Because the subpoenas seek financial records that implicate Morelli's personal privacy interest, he has standing to challenge the non-party subpoenas"); *Arias-Zeballos v. Tan*, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) ("[C]ourts have found that individuals,

10

whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution") (collecting cases).

Where, as here, the Movants have standing, the next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy interests." *See Solow v. Conseco, Inc*., No. 06 CIV. 5988 BSJTHK, 2008 WL 190340, at *4-5 (S.D.N.Y. Jan. 18, 2008) (quashing seeking financial documents where "the documents sought in the subpoena have little or no relevance to the claims and defenses in this action"); *Silverstone*, 650 F. Supp. 3d at 203; *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014); *Merida Cap. Partners III LP v. Fernane*, 2025 WL 1541072, at *5 (S.D.N.Y. May 30, 2025). The burden of establishing relevance is on the party seeking the discovery. *See Refco*, 2024 WL 5420225, at *6.

Applying these standards, the Court should quash all of the 1,016 defective and improper third-party subpoenas, or at minimum modify the subpoenas to exclude requests which seek confidential financial information.

## ARGUMENT

### A.    The Movants Have Standing Because the Subpoenas Seek Their Private Financial Information

Movants have standing to challenge each of the subpoenas at issue because they seek private confidential financial information through: (i) the Bank Subpoenas which request detailed information about Movants' bank accounts and transaction-level financial details associated with those accounts, and (ii) the Clearing House Subpoenas which seek transaction-level financial information involving Movants, by targeting "all payment messages involving any Defendant," which may reveal the existence, timing, amount, sender, recipient, bank, routing path, and payment

11

purpose of the transaction. The Bank Subpoenas and Clearing House Subpoenas also disclose individual Movantss' personal identifiers—including dates of birth, Social Security numbers, and employer identification numbers—to "facilitate" a search for their financial transactions.

Courts in this Circuit consistently hold that individuals, corporations, and LLCs have a privacy interest in their financial affairs sufficient to challenge subpoenas to third-party financial institutions. *See, e.g., Morelli*, 2020 WL 6508858, at *5; *Arias-Zeballos*, 2007 WL 210112, at *1. Courts also recognize privacy interests in corporate bank and financial records. *See Silverstone*, 650 F. Supp. 3d at 202-03; *LG Cap. Funding, LLC v. Exeled Holdings Inc.*, 2023 WL 3993751, at *1 (S.D.N.Y. June 14, 2023). Thus the Movants—which include individuals Paul Leight, Kevin Singer, Edgar Enriquez, Readus Smith, Jerry Maynard Sr., Jerry Maynard Jr., Lane Mazei, and Denielle Giscombe, corporations DrugPlace, Inc. (FL), DrugPlace, Inc. (TN), Community Health Initiative, Inc., and limited liability companies Nakorn Wholesalers, LLC and Galaxy Med, LLC— all have protectible privacy interests in their non-public financial affairs.[5]

Moreover, individual Movants that are residents of Florida (including Paul Leight and Kevin Singer) have additional legitimate expectations of privacy for their financial records through Article 1, Section 23 of Florida's Constitution. *See Shojaee v. Anibal J. Duarte-Viera, P.A.*, 365 So. 3d 1190, 1193 (Fla. 3d DCA 2023) (quashing third-party subpoenas seeking financial information concerning movant's divorce because "financial information is protected under the Florida Constitution" and the pleadings did not show relevancy of documents requested).

Therefore, Movants have standing to seek the relief requested in this Motion.

---

[5] None of the Movants are publicly traded companies with public financial disclosures.

**B.** **The Probative Value of the Documents Sought Does Not Outweigh the Movants' Privacy Interests Because the Subpoenas Are Not Connected to the Allegations in the Underlying Action**

The subpoenas should be quashed because their probative value is minimal compared to the privacy interests they invade. Lilly's theory in the Underlying Action concerns alleged Trulicity rebate claims that Defendants caused to be submitted to Lilly through Health Delegates and PBMs, paid by Lilly to the PBMs, and Defendants' alleged resale of Trulicity. But the subpoenas are not even remotely tailored to this theory.

The Bank Subpoenas request information about personal bank accounts or bank accounts held by the corporate Defendants that have no connection whatsoever to any of Lilly's theories. The Bank Subpoenas and Clearing House Subpoenas request detailed information about every banking transaction involving Movants since January 1, 2019. Incredibly, Lilly served over 1,000 financial institutions, without any consideration as to whether any of the Movants even hold accounts or transact through those institutions. For individual Movants, these subpoenas would capture personal wires, family transfers, mortgage payments, rent payments, tax payments, investment transfers, payroll, medical payments, legal payments, and other private transactions. For entity Movants, they would capture unrelated vendor payments, ordinary payroll, rent, tax payments, financing transactions, intercompany transfers, and business payments unrelated to Lilly, PBMs, Health Delegates, or any entity involved in the alleged resale of prescription drugs.

The mere fact that there are payment messages involving a Defendant (under the Clearing House Subpoenas) or the Defendant holds a bank account with the bank recipient (under the Bank Subpoenas) does not make the account or transaction relevant to any of the claims or defenses in the Underlying Action. Lilly has not alleged that every payment involving every Movant since 2019 is connected to the alleged scheme. Nor could it. The subpoenas therefore seek private

13

financial material far beyond any legitimate discovery need. *See, e.g.*, *Silverstone*, 650 F. Supp. 3d at 202-03 (granting motion to quash subpoena seeking movant company's banking records at Chase Bank); *Morelli*, 2020 WL 6508858, at *4, 6 (quashing subpoenas issued to banks and concluding the "sweeping nature of [plaintiffs'] request for information of tangential relationship to [their] claims" is the "epitome of the classic 'fishing expedition'" designed to harass and seek irrelevant information as well as information disproportionate to the needs of the case); *contra LG Cap. Funding, LLC*, 2023 WL 3993751, at *2 (recognizing movant company had a privacy interest in its financial records but denying the motion to quash because the subpoena *was limited to the particular loan transactions at issue* or similarly structured ones). That Lilly issued the same subpoena to over 1,000 financial institutions across the country also reveals a lack of a reasonable basis to conclude that the discovery requested is neither unreasonable nor unduly burdensome, in violation of Rule 26(g)(1)(B).[6]

**C.       The Privacy Interests at Stake Outweigh Any Probative Value of the Subpoena**

The privacy/probative-value balance strongly favors Movants. The subpoenas substantially intrude Movants' protected privacy interests in their non-public financial records. They seek detailed account records and transaction-level financial information concerning Movants for more than seven years. That information would inevitably reveal personal spending, family transfers, account details, transactions with unrelated parties, business ventures unrelated to the alleged conduct, and other private financial activity already described above. The subpoenas also disclose

---

[6] Counsel for Lilly told the Court, on the record and in response to the Court's questions as to the anticipated third-party discovery, that "the third parties are the banks, so we can see where the money went and who else was involved in it." Ex. I at 21:1-2. Counsel also represented that "[s]ome [of the banks] are local, some are national." *Id.* at 31:23 – 32:3. Serving over 1,000 banks is not just "some" banks and doing so without any discernable tether to any of the Defendants to look for "who else was involved" is a fishing expedition, not an appropriate use of third-party discovery and the Court's subpoena power.

14

sensitive personal identifiers to facilitate that search. These sweeping intrusions into Movants' private financial affairs weigh heavily in favor of quashing the subpoenas.

On the other side of the scale, Lilly has not tailored its requests to the alleged transactions implicated in the Underlying Action. Properly tailored discovery might reach, for sake of argument, specific alleged rebate proceeds or transactions involving the alleged resale of Trulicity. But that limited possibility does not justify Lilly's broad-sweeping demands for every payment message involving every Movant for any purpose since January 1, 2019 under the Clearing House Subpoenas or details about every bank account and every transaction therein associated with Movants under the Bank Subpoenas. The subpoenas therefore seek vast amounts of private financial information with no meaningful connection to the claims or defenses in the Underlying Action. This also weighs heavily in favor of quashing the subpoenas.

### D.    All of Lily's Subpoenas Violate Rule 45's 100-Mile Requirement

To further illustrate Lilly's disregard for the Federal Rules of Civil Procedure, none of the 1,016 subpoenas comply with Rule 45's geographic limits. Rule 45(c)(2) permits a subpoena to command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the [subpoena recipient] resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2). Yet, Lilly designated the same place of compliance for all of the Bank Subpoenas and the Clearing House Subpoenas—its counsel's New York office at Patterson Belknap Webb & Tyler, 1133 Avenue of the Americas, New York, NY 10036— regardless of the subpoena recipient's location. This is the kind of geographic overreach that Rule 45 prohibits and confirms that Lilly did not undertake any assessment specific to each recipient before launching its nationwide subpoena campaign. Lilly uniformly designating an improper compliance location further reflects the gamesmanship that Lilly intentionally chooses to pursue and provides an independent basis to quash or, at a minimum, modify the subpoenas.

15

## CONCLUSION

For the foregoing reasons, Movants respectfully submit that the subpoenas should be quashed, or in the alternative, at minimum, Lilly should be ordered to modify the subpoenas to exclude Movants' personal financial information and all other irrelevant information sought that impinges on Movants' protected privacy interest, and the Court should award such other and further relief as the Court deems just and proper.

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATIONS

I, Michelle Bernstein, hereby certify that the foregoing Memorandum of Law complies with the word-count limitations and formatting requirements applicable in the United States District Court for the Southern District of New York. Using the Microsoft Word word-count feature, the Memorandum of Law contains 5,042 words, excluding the caption, signature blocks, and certificates, but do include the material contained in the footnotes, consistent with the S.D.N.Y Local Rule 7.1(c).

*/s/ Michelle Bernstein*
Michelle Bernstein

Dated: New York, New York
        July 21, 2026

Respectfully submitted,

/s/ *Michelle Bernstein*
Michelle Bernstein
**POLSINELLI PC**
600 3rd Avenue, Suite 4200
New York, NY 10016
Tel: (212) 413-2848
mbernstein@polsinelli.com

James Mangiaracina (*pro hac vice* forthcoming)
**POLSINELLI PC**
Three Logan Square
1717 Arch Street, Suite 1200

16

Philadelphia, PA 19103
Tel: (215) 267-3047
jmangiaracina@polsinelli.com

*Attorneys for Movants DrugPlace, Inc. (FL); DrugPlace Inc. (TN); Community Health Initiative, Inc.; Nakorn Wholesalers, LLC; Paul Leight; Kevin Singer; and Edgar Enriquez.*

Henry Leventis
**Holland & Knight, LLC**
150 Third Avenue S, Ste. 2800
Nashville, TN 37201
Tel: (615) 850-6110
Henry.leventis@hklaw.com

*Attorney for Jerry Maynard Jr.*

Andrew Solinger
**Holland & Knight, LLC**
150 Third Avenue S, Ste. 2800
Nashville, TN 37201
Tel: (615) 850-8062
Andrew.solinger@hklaw.com

J. Nicholas Bunch
**Haynes and Boone, LLP**
2801 N. Harwood St., Ste. 2300
Dallas, TX 75201
Tel: (214) 651-5537
Nick.bunch@haynesboone.com
*Attorney for Galaxy Med, LLC d/b/a Galaxy Pharmacy, Brightline Wholesale LLC, Lane Mazei, Danielle Giscombe, and Readus Smith*

DATED: July 21, 2026

<u>**CERTIFICATE OF SERVICE**</u>

I, Michelle Bernstein, hereby certify that on July 21, 2026 a true and correct copy of

the foregoing was served upon counsel of record for Respondents via email and, on July 21, 2026,

via U.S. Certified mail upon:

> **Jay Brian Shapiro**
> *Stearns Weaver Miller Weissler Alhadeff & Sitterson*
> Museum Tower
> 150 W Flagler Street
> Suite 2200
> Miami, FL 33130
> (305) 789-3229
> Fax: 789-3395
> **jshapiro@stearnsweaver.com**
>
> **Ryan Mitchell Wolis**
> *Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.*
> 200 E. Las Olas Boulevard
> Ste 2100
> Fort Lauderdale, FL 33301
> (954) 462-9510
> Fax: (954) 462-9567
> **rwolis@stearnsweaver.com**
>
> **Veronica Louise De Zayas**
> *Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.*
> 150 W. Flagler St.
> Suite 2200
> Miami, FL 33130
> (305) 789-4104
> **vdezayas@stearnsweaver.com**
>
> **Aron Fischer**
> *Patterson Belknap Webb & Tyler LLP*
> 1133 Avenue of the Americas
> New York, NY 10036
> (212) 336-2000
> **afischer@pbwt.com**
>
> **Geoffrey Potter**
> *Patterson Belknap Webb & Tyler LLP*
> 1133 Avenue of the Americas
> New York,  NY 10036

18

(212) 336-2000
Fax: 715-8402
**gpotter@pbwt.com**

**Joshua Kipnees**
*Patterson Belknap Webb & Tyler LLP*
1133 Avenue of the Americas
New York,NY 10036
(212) 336-2000
**jkipnees@pbwt.com**

<u>*/s/ Michelle Bernstein*</u>
Michelle Bernstein

Date: July 21, 2026

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS, LLC; GALAXY MED, LLC D/B/A GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; PAUL LEIGHT; KEVIN SINGER; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; and DANIELLE GISCOMBE,

          Movants,

v.

ELI LILLY AND COMPANY,

          Respondent.

Miscellaneous Case No. _____

Underlying Action: *Eli Lilly and Company v. DrugPlace, Inc. et al.* (No. 1:26-cv-23516-FAM) (S.D. Fla.)

### [PROPOSED] ORDER

**AND NOW**, this ____ day of _____ 2026 upon considering Movants' Motion to Quash Respondent's Subpoenas, it is **ORDERED** that said Motion is **GRANTED.** The Subpoenas are hereby **QUASHED.**

                                        _____

                                        United States District Judge